UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

DEUTSCHE BANK SECURITIES INC. et al.,

                Plaintiffs,

 -v-                                           No.  15CV534-LTS

THOMAS M. ROSKOS JR. et al.,

                Defendants.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        Plaintiffs Deutsche Bank Securities Inc. ("DBSI"), DB Alex. Brown LCC ("DB Alex. Brown") and Private Bank Employees Janet Sible, Mark Westhoff, Michael Jacoby, J. Ralph Parker, Nancy Fahmy, Michael Raphael, and Mary Ann Coleman (the "PBEs" and, collectively with DBSI and the PBEs, "Plaintiffs") bring this action against Thomas M. Roskos, Jr., Dr. Thomas Roskos, Sr., Brion Applegate, Eddy Aslanian, Tom Jermoluk, Val Vaden, and Lilli J. Rey (collectively, "Defendants") to enjoin an arbitration pending before the Financial Industry Regulatory Authority ("FINRA").  Plaintiffs have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking: (1) an order declaring that the Defendants' dispute with Plaintiffs is not arbitrable; (2) permanent injunctive relief preventing Defendants from pursuing their claims in arbitration; (3) dismissal of Defendants' counterclaim; and (4) an award of all attorneys' fees and costs associated with this action.  Defendants have cross-moved for summary judgment, seeking: (1) a declaration that Plaintiffs must arbitrate the claims against them; (2) denial of Plaintiffs' motion for summary judgment;

(3) dismissal of Plaintiffs' Amended Complaint; and (4) an award of all attorneys' fees and other costs associated with this action.  The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because the claims asserted in the subject arbitration demand include claims pursuant to federal statutes.  (See, e.g., Docket Entry No. 14, Amended Complaint ("Am. Compl."), Ex. A ¶¶ 57-73.)

The Court has reviewed the parties' submissions carefully and, for the reasons set forth below, Plaintiffs' motion for summary judgment is granted in part, except insofar as DB Alex. Brown moves for summary judgment as against Defendant Val Vaden.  Defendants' cross-motion is granted to the extent that it seeks to compel DB Alex. Brown to arbitrate Val Vaden's claims against it, and is denied in all other respects.

BACKGROUND[1]

Between 2000 and 2002, the Defendants each engaged in one or more tax shelter schemes pursuant to what is known as the Custom Adjustable Rate Debt Structure ("CARDS") strategy.  (Docket Entry No. 29, Pl. 56.1 St. ¶ 1.)  Eventually, the IRS concluded that the CARDS transactions lacked economic substance and disallowed the losses that had been claimed by Defendants, who were required to pay their back taxes, along with interest and penalties.  (Id. ¶¶ 17-20.)

---

[1] The facts recited herein are undisputed unless otherwise indicated.  Facts characterized as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there has been no contrary, non-conclusory factual proffer.  Citations to the parties' respective Local Civil Rule 56.1 Statements ("Def. 56.1 St." or "Pl. 56.1 St.") incorporate by reference the parties' citations to underlying evidentiary submissions.

On October 27, 2014, twelve years after the CARDS transactions, Defendants filed a Statement of Claim with FINRA, alleging that they had suffered injuries stemming from their participation in the tax shelters.  (Pl. 56.1 St. ¶ 21.)  Defendants named DBSI and PBEs Sible, Westhoff and Jacoby as parties to the claim, and then later amended the claim to add PBEs Parker, Fahmy, Raphael, Coleman, as well as DB Alex. Brown.  (Id.)  All of the PBEs either are now, or have been previously, registered with FINRA.  (Id.; Def. 56.1 St. ¶¶ 1-3.)  DB Alex. Brown was a broker-dealer firm registered with FINRA until 2001, when it merged with DBSI, which itself has been registered with FINRA since 2001.  (Def. 56.1 St. ¶¶ 1-3.)

Deutsche Bank AG ("DB AG"), a non-FINRA member, was the primary financial lending institution with respect to the CARDS transactions, extending bank loans to each of the Defendants that were memorialized in Credit Agreements executed by special purpose entities created for each Defendant.  (Pl. 56.1 St. ¶ 2.)[2]  DB AG executed the CARDS loan agreements with Defendants and received the CARDS loan fee from each Defendant pursuant to the Credit Agreements.  (Id. ¶¶ 2, 5-6; see also Docket Entry No. 28, Declaration of Allan N. Taffet ("Taffet Decl."), Exs. E-H.)[3]  The accounts holding the collateral for the CARDS loans were, with one exception, held by Deutsche Bank Trust Company Americas ("Deutsche Bank Private

---

[2] Defendants note that the initial bank loans from DB AG were made to a third-party limited liability company, not to Defendants.  (See Def. 56.1 Counter St. ¶ 2.)  Defendants each then acquired only a minority share of the initial loan (about 15%) in connection with a separate assumption agreement by which each Defendant assumed joint and several liability for the entire loan.  (See id.)

[3] This fact is generally disputed by Defendants, who argue that, by providing brokerage services to Defendants as part of their responsibilities to Deutsche Bank, the PBEs entered into "agreement[s]" with Defendants.  (See Def. 56.1 Counter St. ¶ 5.)

Bank"), also a non-FINRA member. (Pl. 56.1 St. ¶ 7.)[4] In or about 2002, certain Defendants represented to the IRS, under penalty of perjury, that DB AG was the entity that had extended them the CARDS loans. (Id. ¶ 18.)

Pursuant to the Credit Agreements signed between Defendants and DB AG, the PBEs provided support and "services" to Defendants. (Id. ¶ 14.) Plaintiffs characterize the nature of the "services" provided by the PBEs as "administrative" (see id.), while Defendants claim that the PBEs performed direct financial brokerage services at the direction and on behalf of Defendants. (See Def. 56.1 Counter St. ¶ 14.) It is undisputed that the PBEs executed or supervised the execution of various foreign exchange swaps and similar securities transactions on behalf of Defendants. (Def. 56.1 St. ¶ 10.) The PBEs also effected promissory note transactions and foreign exchange trades in connection with Defendants' CARDS transactions. (Id. ¶ 11.)[5] Defendants assert that the PBEs were paid transaction-based compensation by Deutsche Bank and received "lending," "structuring," and "custody" fees in connection with Defendants' CARDS transactions. (Id. ¶¶ 14-15.)[6] Defendants do not allege that they ever met

---

[4] Defendant Val Vaden also held a collateral account with DB Alex. Brown in connection with his CARDS transactions. (See Def. 56.1 Counter St. ¶ 7.) See also infra note 8.

[5] Plaintiffs do not dispute that promissory note transactions and foreign exchange trades were in fact executed, but assert they were executed on behalf of DB AG at the direction, and with express authorization, of Defendants or through their agent myCFO, not by direct order from Defendants directly to the PBEs. (See Docket Entry No. 45, Pl. 56.1 Counter St. ¶ 12.)

[6] Plaintiffs dispute that the evidence cited by Defendants supports the conclusion that the PBEs received transaction-based compensation for their work as employees of Deutsche Bank in connection with the CARDS transactions, arguing that the referenced records show only that revenue generated by individual employees was tracked. (See Pl. 56.1 Counter St. ¶ 14.)

with or spoke to the PBEs.  (Pl. 56.1 St. ¶ 16.)[7]  Of the seven Defendants, only Val Vaden had an account with DB Alex. Brown that was connected in any way with the CARDS transactions.  (Def. 56.1 St. ¶ 17.)[8]

## DISCUSSION

<u>Propriety of Declaratory Relief</u>

Plaintiffs seek a declaratory judgment holding that Defendants' claims against them are not arbitrable.  Pursuant to the Declaratory Judgment Act, a court "may declare the rights and other legal relations of any interested party seeking such a declaration in "a case of actual controversy."  28 U.S.C. § 2201(a); <u>see also</u> <u>Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 411 F.3d 384, 388 (2d Cir. 2005).  An "actual controversy" exists if there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  <u>Duane Reade</u>, 411 F.3d at 388.  More specifically, a court must entertain a declaratory judgment action when the judgment will serve a useful purpose in clarifying and settling the legal relations at issue, or when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.  <u>Duane Reade</u>, 411 F.3d at 389.  Given that Defendants have initiated a FINRA arbitration proceeding against the Defendants, declaratory relief is appropriate in order to clarify the parties' respective rights to pursue, or have terminated, the arbitration.

---

[7] Defendants did, however, communicate directly with the PBEs in writing. (<u>See</u> Def. 56.1 Counter St. ¶ 16.)

[8] Certain municipal bond holdings in Defendant Val Vaden's DB Alex. Brown account served as collateral to secure his CARDS loan.  (<u>See</u> Pl. 56.1 Counter St. ¶ 17.)

Rule 56 Summary Judgment Standard

Summary judgment is appropriate when, after construing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is considered material if "it might affect the outcome of the suit under the governing law," and a dispute of fact is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).  The opposing party bears the burden of establishing a genuine issue of fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  Johnson v. Killian, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted).  Where, as here, there are cross-motions for summary judgment, these standards are applied with respect to each of the motions.  See, e.g., Schwabenbauer v. Board of Educ. of City School Dist. of City of Olean, 667 F.2d 305, 314 (2d Cir. 1981) (when considering cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.").

FINRA Rule 12200

        FINRA Rule 12200 requires FINRA members to submit to arbitration of a dispute if: (1) arbitration is required by written agreement; or (2) arbitration is requested by a "customer."  See FINRA Rule 12200.  Arbitration upon demand by a customer is mandatory if the arbitration demand concerns a dispute that arose between the customer and a FINRA member or an associated person of a FINRA member in connection with the business activities of the FINRA member or associated person.  Id.  The FINRA Code does not define "customer," except to say that a "customer shall not include a broker or dealer."  FINRA Rule 12200(I).  Here, Defendants claim that they were "customers" of the PBEs, all of whom are or were FINRA-registered brokers (see Docket Entry No. 39, Defendants' Memorandum of Law in Support of Their Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment ("Def. Memo"), at p. 8) and, alternatively, that they were customers of DBSI and DB Alex. Brown, which are "associated persons" of the PBEs.  (See Docket Entry No. 49, Defendants' Reply in Support of Their Cross-Motion for Summary Judgment ("Def. Reply"), at p. 7.)

        At the core of the instant dispute is the definition of the term "customer" under FINRA Rule 12200.  The Second Circuit addressed this issue in its 2014 decision in Citigroup Glob. Markets Inc. v. Abbar, 761 F.3d 268 (2d Cir. 2014) ("Abbar").  Prior to Abbar, no "bright line" rule existed for determining whether a FINRA claimant was a "customer" for the purposes of Rule 12200, though certain earlier decisions had addressed the meaning of the term.  See UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc., 660 F.3d 643, 650 (2d Cir. 2011) (holding that the purchase of a good or service from a FINRA member creates a "customer" relationship);

Oppenheimer & Co. v. Neidhardt, 56 F.3d 352, 357 (2d Cir. 1995) (finding that a "customer" relationship was created under FINRA Rule 12200 by "placing funds with Oppenheimer for investment.").

The defendant investor in Abbar had lost $383 million that he had invested with CGML, a United Kingdom affiliate of Citigroup, Inc., that was not a FINRA member. See Citigroup Glob. Markets, Inc. v. Abbar, 943 F. Supp. 2d 404, 408 (S.D.N.Y. 2013). Abbar had purchased complex option agreements from CGML, which held ownership of all the assets; the work of structuring and negotiating the option agreements had been done by personnel of CGMI, a New York affiliate of Citigroup, Inc. CGMI was a FINRA member with which Abbar had communicated frequently in connection with his option fund investments. See id. at 406. CGML and entities affiliated with Abbar were the only parties named in the two option agreements. See id. Loan facilities were provided by Citibank entities situated in Switzerland. See id. at 407.

Abbar commenced a FINRA arbitration proceeding against CGMI, claiming that he was a "customer" of CGMI. CGMI then brought an action in the Southern District of New York, seeking to enjoin the arbitration. See id. at 404. Following a nine-day bench trial in which the district court had reviewed evidence concerning "the substance, nature and frequency of each interaction and task performed by the various persons who dealt with Mr. Abbar, their contemporaneous understandings of whose behalf the person was acting, and the extent to which the person's activities shaped or caused the transaction," in connection with contentions that such facts would "coalesce into a functional concept of the customer relationship capable of supporting a judicial determination," the district court found that Abbar and the other defendants

were not customers of CGMI.  Id. at 407-08.  This conclusion was based "primarily . . . [on] the overwhelming significance of the execution of the transactions with CGML and the Swiss banks, and that the planning, structuring, and other services performed by CGMI in New York were ancillary and collateral to those central core transactions."  See 943 F. Supp. 2d at 408.  Noting, however, that the extensive inquiry underlying that determination was inconsistent with the summary nature of arbitrability determinations contemplated by the federal Arbitration Act, the district court observed that there was a "better way," and held that customer status should be determined by reference to the identity of "the party with which [the investor] has the account and consummates the transaction," in that "[t]he entity in which the investor has his account, and from whom the investor purchases his desired product, defines the legal and business locus of his status as a customer, and is the core of the relationship as a customer."  Id. at 408.

In affirming the district court's decision, the Second Circuit made clear its intention to set a "bright line rule" for defining the "customer" relationship pursuant to FINRA Rule 12200, and held that a "customer" under FINRA Rule 12200 is one who either (1) purchases a good or service from a FINRA member or (2) has an account with a FINRA member.  See Abbar, 761 F.3d at 275.  Under this formulation, "[t]he only relevant inquiry in assessing the existence of a customer relationship is whether an account was opened or a purchase made; parties and courts need not wonder whether myriad facts will 'coalesce into a functional concept of the customer relationship.'"  Id. at 276 (quoting district court).  "Multiple inputs," the court instructed, "do not necessarily create customer relationships in different places simultaneously," despite the complexity of modern financial transactions.  761 F.3d at 276.  Noting what it deemed the material undisputed facts before it – that Abbar never held an account

with CGMI and, notwithstanding his arguments regarding services performed on his behalf, "never purchased any goods or services from" CGMI – the Second Circuit held that the new formulation could readily be applied to reach the conclusion that there was no customer relationship with a FINRA member.  See id.

Here, it is similarly undisputed that the documented core transactional relationships – the CARDS credit agreements – existed between Defendants and DB AG, a non-FINRA entity.  Defendants' arguments that they should be recognized as customers of DB AG's FINRA affiliates and the PBEs because numerous ancillary transactions were allegedly performed on their behalf in connection with the CARDS transactions are fundamentally the same as those that were rejected in Abbar under the Second Circuit's bright-line principle.  As in Abbar, the services provided by FINRA members were not purchased from the FINRA members and Defendants did not become their customers by virtue of Plaintiffs' participation in the implementation of the transactions contemplated by the credit agreements.  Indeed, Defendants have produced no evidence demonstrating that the compensation that PBEs may have received directly or indirectly in connection with the CARDS transactions was anything other than an ancillary consequence of the compensation they received as employees of DBSI or DB Alex. Brown.

Thus, because Defendants were not account holders of DBSI and purchased no goods and services from DBSI or the PBEs, they were not "customers" of those Plaintiffs within the meaning of FINRA Rule 12200, as construed in Abbar, and they are not entitled to arbitrate their claims against those Defendants.  The Court therefore grants the summary judgment motion of Plaintiffs DBSI, Janet Sible, Mark Westoff, Michael Jacoby, J. Ralph Parker, Nancy Fahmy,

Michael Raphael and Mary Ann Coleman to the extent that it seeks a declaratory judgment that Defendants cannot compel the DBSI or PBEs to arbitrate Defendants' claims against them in the FINRA arbitration proceeding.

Defendants have, however, demonstrated that Val Vaden is, as a matter of law, entitled to pursue arbitration of his claim against DB Alex. Brown. It is undisputed that Vaden held an account with that entity, which was a FINRA member at the time of the CARDS transactions, and that the account was used to collateralize the CARDS transactions. Under the rule established by Abbar, an account relationship creates a customer relationship. See 761 F.3d at 275.

Applying this rule in the instant case, it is clear that a "customer" relationship existed between Vaden and DB Alex. Brown because Vaden held an account with DB Alex. Brown. Vaden kept collateral in that account that was used in connection with Vaden's CARDS transactions. Vaden alleges in the FINRA Statement of Claim that DB Alex. Brown engaged in business activities that were injurious to him (see ECF Docket Entry No. 42-3 (the "FINRA Claim")); thus the claim falls within both the Abbar definition of "customer" and the express language of FINRA Rule 12200. The Court therefore denies DB Alex. Brown's motion for summary judgment against Val Vaden, grants Val Vaden's cross-motion for summary judgment as against DB Alex. Brown and will enter a declaratory judgment that DB Alex. Brown must arbitrate Vaden's claims in the FINRA arbitration proceeding.

Injunctive Relief

"To obtain a permanent injunction, a plaintiff must succeed on the merits and show the absence of an adequate remedy at law and irreparable harm if the relief is not granted." Roach v. Morse, 440 F.3d 53, 56 (2d Cir. 2006) (citation omitted).  As explained above, DBSI and the PBEs have succeeded on the merits of their claim.  Moreover, the Court finds that these Plaintiffs will suffer irreparable harm if Defendants are not enjoined from proceeding in the FINRA arbitration, as Plaintiffs would be forced to expend time and resources arbitrating a dispute that is not arbitrable.  See, e.g., Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 129 (2d Cir. 2003) (citation omitted).  Injunctive relief is therefore appropriate here and the Court will enter a judgment permanently enjoining Defendants from pursuing their claims against DBSI and the PBEs in FINRA arbitration.

## CONCLUSION

For the foregoing reasons, the Court grants the motion of Plaintiffs DBSI, Janet Sible, Mark Westhoff, Michael Jacoby, J. Ralph Parker, Nancy Fahmy, Michael Raphael, and Mary Ann Coleman in its entirety.  The Court hereby declares that Defendants cannot compel FINRA arbitration against these Plaintiffs of the claims asserted in Defendants' Amended Statement of Claim in FINRA case 14-3280.  (See the FINRA Claim.)  Defendants are permanently enjoined from proceeding with FINRA arbitration of the FINRA Claim against these Plaintiffs.

The Court grants Plaintiff DB Alex. Brown's motion for summary judgment to the extent that it seeks declaratory and injunctive relief barring FINRA arbitration of the FINRA

Claim as asserted by all Defendants other than Val Vaden.  Plaintiff DB Alex. Brown's motion for summary judgment seeking relief as against Val Vaden is denied. Defendant Val Vaden's cross-motion for summary judgment is granted insofar as it seeks to compel DB Alex. Brown to submit to FINRA arbitration of Val Vaden's FINRA Claim against it.  All of the Defendants' remaining cross-motions are denied in their entirety.

In light of the fact that neither Plaintiffs nor Defendants have proffered a factual or legal basis for their requests for awards of attorneys' fees or costs, all parties' requests for such fees and costs are denied.

The Clerk of Court is requested to enter judgment accordingly and to close this case.

This Memorandum Opinion and Order resolves Docket Entry Nos. 26 and 40.

SO ORDERED.

Dated: New York, New York
August 4, 2016

  /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge